**IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | | |
|---|---|---|
| SOLID GOLD JEWELERS, | ) | CASE NO:  5:07CV1555 |
| | ) | |
| Plaintiff, | ) | JUDGE ADAMS |
| | ) | |
| vs. | ) | |
| | ) | |
| ADT SECURITY SYSTEMS, INC., | ) | |
| | ) | |
| Defendant. | ) | |

**DEFENDANT ADT SECURITY SERVICES, INC.'S MOTION FOR
JUDGMENT ON THE PLEADINGS**

Defendant ADT Security Services, Inc. ("ADT"), by counsel and pursuant to Rule 12(c) of the Federal Rules of Civil Procedure, hereby moves this Court for judgment in its favor on the pleadings. The law and argument supporting this Motion are more fully set forth in the attached Memorandum of Law, which is incorporated by reference herein.

Respectfully submitted,

*/s/ Joshua A. Klarfeld*
John R. Mitchell (0066759)
*John.Mitchell@ThompsonHine.com*
Joshua A. Klarfeld (0079833)
*Joshua.Klarfeld@ThompsonHine.com*
**THOMPSON HINE LLP**
3900 Key Center
127 Public Square
Cleveland, OH 44114-1291
Telephone: 216.566.5500
Fax: 216.566.5800

Charles C. Eblen (Mo. Bar No. 55166)
(admitted pro hac vice)
*ceblen@shb.com*
Anne M. Carlson (Mo. Bar No. 58786)
(admitted pro hac vice)
*acarlson@shb.com*
**SHOOK, HARDY & BACON L.L.P.**
2555 Grand Blvd.
Kansas City, Missouri 64108-2613
Telephone: 816.474.6550
Facsimile: 816.421.5547

*Attorneys for Defendant ADT Security Services, Inc.*

IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| SOLID GOLD JEWELERS, | ) | CASE NO: 5:07CV1555 |
| | ) | |
| Plaintiff, | ) | JUDGE ADAMS |
| | ) | |
| vs. | ) | |
| | ) | |
| ADT SECURITY SYSTEMS, INC., | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM IN SUPPORT OF ADT SECURITY SERVICES INC.'S
MOTION FOR JUDGMENT ON THE PLEADINGS**

**INTRODUCTION**

In 1999, Plaintiff Solid Gold Jewelers entered into a contract with ADT to provide security alarm services at its place of business. On May 18, 2006, a burglar broke into Solid Gold Jewelers and stole $46,265.87 worth of merchandise. Plaintiff seeks to hold ADT responsible for the losses it suffered as a result of being burglarized.

Plaintiff's complaint alleges ADT failed to properly install, inspect, maintain, and replace the security system, to notify police and Plaintiff's representative when the alarm signal was received, and to conduct an investigation and convey results to the Plaintiff after the break-in. The four-count complaint alleges breach of contract, negligence, and two counts of fraud.

Plaintiff, however, is not entitled to recover against ADT because its claim is legally deficient. This is a case about alleged unmet contractual expectations. Any duty ADT assumed in this case originated from the "Commercial Sales Agreement" ("Agreement") Robert Dempsey, owner of Solid Gold Jewelers, signed with ADT on June 10, 1999. Therefore, ADT's duty to Plaintiff was purely contractual, not an independent duty imposed at common law.

Because all facts predicate to Plaintiff's claims are merely incident to the Agreement, the tort remedies Plaintiff seeks are unavailable.

Additionally, the Agreement contains a valid and enforceable limitation-of-liability provision which limits recovery in the event ADT is found to have breached the Agreement or to have committed negligence to $1000. Risk-allocation provisions such as this are readily enforced in Ohio and throughout the country as a prudent means to limit exposure to unlimited consequential damages and to keep alarm services affordable to the general public. ADT's liability in this case is therefore limited in accordance with the terms of the Agreement.

Plaintiff's fraud claims are also deficient as a matter of law. It is well known that a party bringing a fraud claim must prove reasonable reliance on the alleged misrepresentation. Any reliance alleged in this case is unreasonable as a matter of law because it is controverted by the express terms of the Agreement, which Solid Gold is presumed to have read by signing. Here, Plaintiff's fraud claim hinges on alleged oral misrepresentations about the capabilities of the alarm system. But because these representations are contradicted by the express terms of the contract, they cannot form the basis of an actionable fraud claim. Plaintiff's fraud claim is also legally deficient because the alleged misrepresentations concerned matters "inside of the contract," which are not actionable under Ohio law, and because it has failed to allege intent.

Finally, Plaintiff has failed to plead fraud with particularity. The complaint lists allegations of fraud, but does not identify the place where they took place. Further, the fraud allegations are generalized and conclusory. No allegations are even made of a fraudulent intent or scheme when entering the contract.

For the above reasons, Defendant ADT is entitled to judgment on the pleadings.

**ARGUMENT**

I. **LEGAL STANDARD.**

Rule 12(c) of the Federal Rules of Civil Procedure states that "[a]fter the pleadings are closed but within such time as not to delay the trial, any party may move for judgment on the pleadings." FED. R. CIV. P. 12(c).

For purposes of a motion for judgment on the pleadings, a district court "must construe the complaint in the light most favorable to the plaintiff, accept all of the complaint's factual allegations as true, and determine whether the plaintiff undoubtedly can prove no set of facts in support of his claim that would entitle him to relief." *Kottmyer v. Maas*, 436 F.3d 684, 689 (6th Cir. 2006) (quoting *Ziegler v. IBP Hog Market, Inc*., 249 F.3d 509, 512 (6th Cir. 2001) and noting that a motion under Rule 12(c) is nearly identical to a 12(b)(6) motion to dismiss for failure to state a claim upon which relief can be granted). The complaint is deemed to include any document attached to it as an exhibit. FED. R. CIV. P. 10(c).

However, a court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Disabled Patriots of America, Inc. v. Lane Toledo, Inc.*, 325 F. Supp. 2d 837, 839 (N.D. Ohio 2004) (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)).

II. **PLAINTIFF'S TORT CLAIMS ARE BARRED BECAUSE THE DUTIES ALLEGEDLY BREACHED WERE CONTRACTUAL DUTIES, NOT SEPARATE AND INDEPENDENT DUTIES CREATED AT COMMON LAW.**

The contract for security alarm services is the source of the parties' relationship. This means the duty to install, inspect, maintain, and replace the security system, the duty to notify police and Plaintiff's representative when the alarm signal was received, and the duty to conduct an investigation and convey results to the Plaintiff are contract duties arising from the Agreement between the parties.

For a tort duty to arise out of a contractual relationship there must be a breach of duty distinct from a breach of contract. *See Battista v. Lebanon Trotting Ass'n*, 538 F.2d 111, 117 (6th Cir. 1976). "The tort liability of parties to a contract arises from the breach of some positive legal duty imposed by law because of the relationship of the parties, rather than from a mere omission to perform a contract obligation." *Battista*, 538 F.2d at 117 (citing *Bowman v. Goldsmith Bros. Co.*, 109 N.E.2d 556 (Ohio. Ct. App. 1953)). Here, the duties Plaintiff claims were breached emanate from the Agreement, not any duty imposed at common law; therefore no tort claim is available. *Spengler v. ADT Sec. Services, Inc.*, Case No. 06-cv-10036, 2006 WL 3004088, *3 (E.D. Mich. Oct. 20, 2006) (alarm contract does not create an independent tort claim).

### A. The Distinction between Tort and Contract Law.

Although the development of a brightline division between tort and contract law has been fraught with difficulty, many cases have clarified the limited context in which a contract may also give rise to a tort. The Sixth Circuit Court of Appeals, applying Ohio law, set forth the pertinent standard in unequivocal terms:

> it is no tort to breach a contract, regardless of motive. A tort exists only if a party breaches a duty which he owes to another *independently of the contract*, that is, a duty which would exist even if no contract existed.

*Battista*, 538 F.2d at 117 (citing *Bowman*, 109 N.E.2d 556) (emphasis added).

### B. Plaintiff's Tort Claim, Based on a Duty Arising from the Agreement, is not Separate and Independent.

The threshold inquiry is whether the plaintiff alleges a violation of legal duty that is owed independently of the Agreement. *Battista*, 538 F.2d at 117. As applied to this case, a tort claim is available if the duty to install, inspect, maintain, and replace the security system, the duty to notify police and Plaintiff's representative when the alarm signal was received, and the

duty to conduct an investigation and convey results to the Plaintiff are duties that the common law would impose even absent the Agreement. The relevant litmus is whether such duty would exist without reference to the Agreement. *Id.*

ADT owed Solid Gold Jewelers specific contractual duties—to install, inspect, maintain, and replace the security system, to notify police and Solid Gold Jewelers representative when the alarm signal was received, and to conduct an investigation and convey results to the Solid Gold Jewelers. Thus, this case boils down to alleged unmet contractual expectations—the common law does not impose any duty to install, inspect, maintain, and replace a security system, nor any duty to notify police and Solid Gold Jewelers' representative when the alarm signal was received, nor any duty to conduct an investigation and convey results to the Solid Gold Jewelers. Such a duty begins and ends with the Agreement. Examining the parties' relationship independent of the Agreement leaves ADT and Plaintiff as complete strangers. Outside the Agreement, the common law does not obligate ADT to complete any of the duties Plaintiff claims were breached.

A tort claim arising from a contractual duty requires proof of a separate and independent common-law duty; a duty existent absent any contract between the parties. For the reasons discussed above, no independent duty was owed and judgment on the pleadings is appropriate.

### III. PLAINTIFF'S COMPLAINT IS BARRED, OR AT THE VERY LEAST LIMITED, BY THE EXPRESS TERMS OF THE AGREEMENT.

**A. Courts Nationwide Recognize That Prudent Risk Allocation is Essential to the Alarm Industry.**

Additionally, the Agreement limits ADT's liability to $1000. An overarching policy concern has led to the universal enforcement of this risk-allocation provision: the

recognition that alarm companies are not quasi-general insurers; thus mitigating exposure to indeterminate consequential damages is essential to the viability of the alarm industry.

Because alarm companies operate in an industry whose business operations perpetually straddle loss events (burglaries, fires, violent crimes, medical emergencies, and other unforeseeable events), they are a constant target for parties seeking consequential damages for losses an alarm company *did not cause*, such as the burglary in this case. Add that alarm companies price services based on the cost of the service or product provided, not the underlying value of the property or contents where the alarm system is installed, and the industry faces an insolvency risk if hamstrung from allocating risk through contract.

The freedom to allocate risk is therefore acutely important to the alarm industry. Mindful of these concerns, state and federal courts throughout the nation have consistently acknowledged the need for and validity of risk-allocation provisions in alarm service contracts. The cases to this effect are legion. *See, e.g.*, *E. H. Ashley & Co. v. Wells Fargo Alarm Serv.*, 907 F.2d 1274, 1278 (1st Cir. 1990); *Leon's Bakery, Inc. v. Grinnell Corp.*, 990 F.2d 44, 49 (2d Cir. 1993); *Gill v. Rollins Protective Serv. Co.*, 722 F.2d 55 (4th Cir. 1983); *D.L. Lee & Sons v. ADT Sec. Sys. v. Mid South, Inc.*, 916 F. Supp. 1571 (S.D. Ga. 1995); *Am. Dist. Tel. Co. of Ala. v. Roberts & Son, Inc.*, 122 So. 837, 839 (Ala. 1929); *Cent. Alarm of Tucson v. Ganem*, 567 P.2d 1203, 1207 (Ariz. Ct. App. 1977); *Niccoli v. Denver Burglar Alarm, Inc.*, 490 P.2d 304 (Colo. Ct. App. 1971); *Bargaintown of D.C., Inc. v. Fed. Eng. Co.,* 309 A.2d 56 (D.C. 1973); *Cont. Video Corp. v. Honeywell, Inc.,* 422 So. 2d 35 (Fla. Dist. Ct. App. 3d Dist. 1982); *Steiner Corp. v. Am. Dist. Tel.,* 683 P.2d 435 (Idaho 1984); *Gen. Bargain Center v. Am. Alarm Co.*, 430 N.E.2d 407 (Ind. Ct. App. 1982); *Corral v. Rollins Protective Serv. Co.*, 732 P.2d 1260 (Kan. 1987); *Alan Abis, Inc. v. Burns Electronic Sec. Serv., Inc.*, 283 So. 2d 822 (La. App. 2 Cir. 1973); *New

*England Watch Corp. v. Honeywell, Inc.*, 416 N.E.2d 1010 (Mass. App. Ct. 1981); *Morgan Co. v. Minnesota Mining & Mfg. Co.,* 246 N.W.2d 443 (Minn. 1976); *Shaer Shoe Corp. v. Granite State Alarm*, 262 A.2d 285 (N.H. 1970); *Eaves Brooks Costume Co. v. Y.B.H. Realty Corp.*, 556 N.E.2d 1093, 1096 (N.Y. 1990); *Reed's Jewelers, Inc. v. ADT Co.*, 260 S.E.2d 107 (N.C. App. Ct. 1979); *Fretwell v. Prot. Alarm Co.*, 764 P.2d 149 (Okla. 1988); *Wedner v. Fidelity Sec. Sys., Inc.*, 307 A.2d 429 (Pa. Super. Ct. 1973); *Ostalkiewicz v. Guardian Alarm, Div. of Colbert's Sec. Servs.*, 520 A.2d 563 (R.I. 1987); *Houghland v. Sec. Alarms & Serv., Inc.*, 755 S.W.2d 769 (Tenn. 1988); *Schepps v. Am. Dist. Tel. Co.*, 286 S.W.2d 684 (Tex. Civ. App. Dallas 1955); *see also* Annotation, *Validity Construction and Effect of Limited Liability or Stipulated Damages Clause in Fire or Burglar Alarm Service Contract*, 42 A.L.R.2d 591 (Supp. 1995) (stating that "courts have been unanimous in declaring provisions [limiting liability] valid and citing cases from over 25 jurisdictions in support of this proportion").

These courts have repeatedly endorsed the allocation of risk in alarm contracts, acknowledging that alarm services are fraught with risk, exposing such companies to expansive consequential damages. *Leon's Bakery*, 990 F.2d at 49 (cataloging cases to this effect). Alarm companies are not insurance carriers but instead price their products and services based on what they realize on the open market, as opposed to some actuarial computation. *Id.* ADT's monitoring fees would have remained the same whether Solid Gold's place of business stored valuable goods or was boarded and vacant. Common sense dictates that the cost to insure contents of the store would vary dramatically under these disparate scenarios. The full range of risks confronting a given ADT client is unknowable to ADT because it is an alarm company, not an insurer.

This well-recognized policy consideration counsels in favor of granting judgment on the pleadings.

    **B.    Ohio Law Supports the Freedom of Business Entities to Allocate Risk through Contract.**

Ohio law, too, recognizes the need to allocate risk in the alarm service industry. Grounded in the general concept that parties are free to contract as they wish so long as the particular contract does not violate the law or run afoul of public policy, appellate courts in Ohio have repeatedly upheld limitations of liability in alarm service contracts. *See Motorists Mutual Ins. Co. v. ADT Security Sys.*, No. 14799, 14803, 1995 WL 461316 (Ohio App. August 4, 1995); *Askenazi v. Gen. Elec. Co.*, Nos. 16303, 16307, 16085, 1997 WL 447355 (Ohio App. Aug. 8, 1997). Based on the policy considerations above, these courts fall squarely in line with the nearly universal rule that limitations of liability are enforceable in alarm contracts to avoid expensive and indeterminate consequential damages.

Accordingly, any claim of negligence or breach of contract is limited in accordance with the terms of the Agreement.

**IV.    PLAINTIFF'S FRAUD ALLEGATIONS DO NOT STATE CLAIMS UPON WHICH RELIEF MAY BE GRANTED AND THEREFORE FAIL AS A MATTER OF LAW.**

Plaintiff's conclusory fraud allegations are deficient as a matter of law and not actionable for several reasons. First, any alleged reliance in this case is unreasonable as a matter of law because it is belied by the express terms of the Agreement. Plaintiff's fraud claims are also deficient as a matter of law because, even if true, the alleged representations speak to the future performance of matters in the contract, which is not actionable under Ohio law; Plaintiff also fails to allege facts if true would establish the element of intent.

Here, the Complaint alleges two types of fraud: fraudulent inducement to contract and promissory fraud following execution of the contract. To successfully maintain a claim for either under Ohio law, a plaintiff must prove (1) a representation of fact, (2) which is material to the transaction at hand, (3) made falsely, with knowledge of its falsity, or with reckless disregard to its falsity from which knowledge may be inferred, (4) with the intent of misleading another into relying upon it, (5) justifiable reliance upon the representation or concealment, and (6) a resulting injury proximately caused by the reliance. *Williams v. Edwards*, 129 Ohio App. 3d 116, 124, 717 N.E.2d 368, 373-74 (1998).

For the reasons that follow, Plaintiff's fraud claims are legally deficient under this standard.

A. **Plaintiff's Alleged Reliance is Deficient as a Matter of Law.**

Plaintiff makes conclusory and generalized allegations of reliance upon alleged misrepresentations about the operational capabilities of the alarm system. (Compl., ¶¶ 22 and 27). The alleged misrepresentations relate to how the alarm would communicate if an alarm signal was received at the premises. But reliance on these alleged misrepresentations would be *ipso facto* unreasonable in this case because they are contrary to the terms of the Agreement.

As a matter of law, parties to a contract are deemed to have read and understood all provisions of the contracts they sign. *Haller v. Borror Corp*. 552 N.E.2d 207 (Ohio 1990) ("parties to contracts are presumed to have read and understood them"). Thus, either in fact or by operation of law, Solid Gold is imputed with full knowledge of the following:

> **THIS AGREEMENT CONSTITUTES THE ENTIRE AGREEMENT BETWEEN THE CUSTOMER AND ADT. IN EXECUTING THIS AGREEMENT, *CUSTOMER IS NOT RELYING ON ANY ADVICE OR ADVERTISEMENT OF ADT. CUSTOMER AGREES THAT ANY REPRESENTATION, PROMISE, CONDITION, INDUCEMENT OR WARRANTY, EXPRESS OR IMPLIED, NOT INCLUDED IN WRITING IN***

> ***THIS AGREEMENT* SHALL NOT BE BINDING UPON ANY PARTY, AND THAT THE TERMS AND CONDITIONS THEREOF APPLY AS PRINTED WITHOUT ALTERATION OR QUALIFICATION, EXCEPT AS SPECIFICALLY MODIFIED IN WRITING. THE TERMS AND CONDITIONS OF THIS AGREEMENT SHALL GOVERN NOTWITHSTANDING ANY INCONSISTENT OR ADDITOINAL TERMS AND CONDITIONS OR ANY PURCHASE ORDER OR OTHER DOCUMENTS SUBMITTED BY THE CUSTOMER.**

See Agreement, ¶ N (italics added; other emphasis original). This provision expressly refutes the factual basis of Plaintiff's fraud argument. Because Solid Gold is imputed with knowledge of this term, no reasonable party to a commercial transaction could premise a fraud claim upon precontractual representations that are flatly controverted by the language of the governing contract. *Nat'l City Bank v. Facilities Asset Mgmt. Inc.*, 762 N.E.2d 1060, 1064 (Ohio App. 2001) ("It is well established that Ohio law does not allow a party to prove fraud by claiming that the inducement to enter into an agreement was a promise which is squarely contradicted by the written terms of that agreement."); *Columbia Gas Transmission Corp. v. Ogle*, 51 F. Supp. 2d 866, 873 (S.D. Ohio 1997) (same proposition). Thus, Solid Gold's fraud claims are not actionable as a matter of law because the element of reliance is legally deficient.

**B.  Plaintiff Cannot State a Claim for Fraudulent Inducement to Contract Because All of the Alleged Misrepresentations Concerned Matters "Inside the Contract."**

And Plaintiff's fraud claim suffers other deficiencies. Plaintiff alleges that it was induced to enter into the Agreement with ADT in reliance on ADT's alleged misrepresentations, which is a claim of fraudulent inducement under Ohio law. *See ABM Farms, Inc. v. Woods*, 692 N.E.2d 574, 578 (Ohio App. 1998). In such a claim, the fraud relates not to the nature or purpose of the Agreement, but to the facts inducing its execution. *See Haller*, 522 N.E.2d at 210.

The classic case of fraudulent inducement involves misrepresentations concerning matters "outside the contract," or other wrongful conduct. *See ABM Farms*, 692 N.E.2d at 578.

In this case, the misrepresentations alleged by Plaintiff cannot form the basis for a claim of fraudulent inducement as a matter of law because the misrepresentations in questions concern ADT's future performance of its contractual obligations. Plaintiff alleges that ADT represented that the "back-up" signal line would remain fully operational. (Compl. ¶ 20.) Because the alleged representation relates to the nature and purpose of the Agreement, rather than matters "outside the contract," those alleged misrepresentations cannot form the basis for a claim of fraudulent inducement under Ohio law, and this Court should enter judgment for ADT on the pleadings.

  **C.** **Plaintiff Cannot State a Claim for Promissory Fraud Absent a Showing of Intent to Breach at the Time of Contract.**

Additionally, under Ohio law, "fraud is generally predicated on a misrepresentation relating to a past or existing fact, and not on promises or representation relating to future actions or conduct." *Williams*, 717 N.E.2d at 373. A limited exception to this rule exists where an individual makes a promise concerning a future action and, at the time he makes the promise, has no intention of keeping it. *See id.* In such a case, known as "promissory fraud," the individual making the promise has actual fraudulent intent, which is required to maintain a claim of fraud. *See id.*

In the present case, all alleged misrepresentations concerned ADT's future performance of contractual obligations. Plaintiff alleges that, "Defendant, by and through an employee, falsely and fraudulently stated and represented to the Plaintiff that the alarm system was operational and an alarm *would be* received by the Defendant *in the event* of a break in." (Compl. ¶ 25) (emphasis added). However, Plaintiff cannot allege and, in fact, does not allege

that ADT had no intention to perform the future contractual obligations. For this reason, Plaintiff's claim of promissory fraud against ADT fails and this Court should grant judgment on the pleadings.

### D. Plaintiff has Failed to Plead its Fraud Allegations with Particularity.

The Sixth Circuit interprets Rule 9(b) as requiring plaintiffs "at a minimum, to allege the time, place, and content of the alleged misrepresentation on which he or she relied; the fraudulent scheme; the fraudulent intent of the defendants; and the injury resulting from the fraud." *Yuhasz v. Brush Wellman, Inc.*, 341 F.3d 559, 563 (6th Cir. 2003) (quoting *Coffey v. Foamex L.P.*, 2 F.3d 157, 161-162 (6th Cir. 1993)). The Sixth Circuit affirmed the dismissal of the *Yuhasz* fraud claim because the plaintiff had not alleged the claim with the degree of particularity mandated by Rule 9(b). Similarly, in *Bovee v. Coopers & Lybrand C.P.A.*, 272 F.3d 356, 361 (6th Cir. 2001), the Sixth Circuit affirmed the dismissal of a fraud claim because "[g]eneralized and conclusory allegations that the Defendants' conduct was fraudulent do not satisfy Rule 9(b)."

In the current case, there is no question that the Plaintiff has failed to plead its fraud claims with particularity. The complaint does not allege the place of the misrepresentations in question, as required by the complaint does not allege the place of the misrepresentations in question, as required by *Yuhasz*, nor does the complaint identify the fraudulent scheme or intent as, nor does the complaint identify the fraudulent scheme or intent as *Yuhasz* requires. Instead, Plaintiff makes generalized, conclusory allegations of fraud. As such, Plaintiff has not met the requirements of Rule 9(b) and this Court should grant judgment on the pleadings.

## CONCLUSION

This is an ordinary contract action that Plaintiff attempts to artfully dress as something more. Plaintiff's tort claim is deficient as a matter of law and should be dismissed. Additionally, its contract claim is limited in accordance with the terms of the Agreement. Finally, numerous legal deficiencies plague Plaintiff's fraud claims—most notably that any reliance on the alleged misrepresentations is *ipso facto* unreasonable based on the black letter of the Agreement. For all of the above reasons, this Court should grant ADT a judgment on the pleadings and dismiss Plaintiff's Complaint with prejudice.

Respectfully submitted,

*/s/ Joshua A. Klarfeld*
John R. Mitchell (0066759)
*John.Mitchell@ThompsonHine.com*
Joshua A. Klarfeld (0079833)
*Joshua.Klarfeld@ThompsonHine.com*
**THOMPSON HINE LLP**
3900 Key Center
127 Public Square
Cleveland, OH 44114-1291
Telephone: 216.566.5500
Fax: 216.566.5800

Charles C. Eblen (Mo. Bar No. 55166)
(admitted pro hac vice)
*ceblen@shb.com*
Anne M. Carlson (Mo. Bar No. 58786)
(admitted pro hac vice)
*acarlson@shb.com*
**SHOOK, HARDY & BACON L.L.P.**
2555 Grand Blvd.
Kansas City, Missouri 64108-2613
Telephone: 816.474.6550
Facsimile: 816.421.5547

*Attorneys for Defendant ADT Security Services, Inc.*

**CERTIFICATE OF COMPLIANCE WITH LOCAL RULE 7.1(f)**

The undersigned hereby certifies that ***Defendant ADT Security Services, Inc.'s Motion for Judgment on the Pleadings*** does not exceed the page limitations for memoranda related to dispositive motions set by Local Rule 7.1(f) for unassigned cases.

> */s/ Joshua A. Klarfeld*
> *One of the Attorneys for Defendant*
> *ADT Security Services, Inc.*

**CERTIFICATE OF SERVICE**

A copy of the foregoing ***Defendant ADT Security Services, Inc.'s Motion for Judgment on the Pleadings*** was filed electronically this 16th day of July, 2007. Parties will receive notice through the Court's electronic filing system.

>  */s/ Joshua A. Klarfeld*
>  *One of the Attorneys for Defendant*
>  *ADT Security Services, Inc.*